LEWIS F. STRATTON, in equity,

*vs.*

EUROPEAN AND NORTH AMERICAN RAILWAY and others.

Penobscot.    Opinion June 5, 1884.

*Fires set by locomotives. Railroads. Trustees. Equity. Pleadings.*

Where trustees of the bondholders are in possession and operating a railroad, under a mortgage for the security of bondholders, they are liable, to the extent of funds received by them in operating the road, to keep the road, buildings and equipments in repair, furnish such new rolling stock as is necessary, pay the running expenses and apply the balance to the payment of any damages, arising from misfeasance in the management of the road, and after that to the mortgage, as the rights of the parties may require.  A claim for damages to property by fire, communicated by a locomotive while passing along its track at a time when the road was in the posession of and operated by such trustees, does not depend upon proof of malfeasance or negligence, but is an incident to the running of the road and may be considered a part of the running expenses, and is therefore an equitable lien upon the funds liable in the hands of the trustees.

Where such trustees have paid and conveyed to a new corporation, formed by the bondholders, any such funds upon which there was such a lien to that extent the new corporation would be liable in equity to the person suffering the damage.

In such case the bill should contain averments that at the time of the alleged injury and demand for payment, the trustees had in their hands or under their control, any such funds, or that they subsequently conveyed any such funds to the new corporation.

ON exceptions to the ruling of the court that the following bill in equity was not sustainable upon the facts therein stated.

" State of Maine.

"To the Honorable Justices of the Supreme Judicial Court, sitting as a Court of Equity, at Bangor, in and for the county of Penobscot:

" The bill of complaint of Lewis F. Stratton, of Bangor, in said county, against the European and North American Railway, a corporation doing business at said Bangor, duly organized under the laws of said state, and Hannibal Hamlin and William B. Hayford, trustees, as hereinafter set forth.

"And now said Stratton gives the court to be informed, that he is now and for three or more years past has been possessed and seized as owner of several lots of land situate in Matta-wamkeag, in said county, and especially of lots numbered 113, 124, 125, 135, 137, 138 and 150, and other lands adjoining the same, all which were covered with a heavy growth of wood and timber of great value, and that the railroad known as the European and North American Railway, in its course from Bangor to Vanceboro, passes over and across the said lands, so that all said lots are adjacent to or in the immediate neighborhood of said railroad; that on or about the 16th day of June, A. D. 1880, while the locomotive employed in the service of the said road was passing along the track of said road in due course of business and travel, fire was carelessly, or in some other improper way communicated by the locomotive engine to the growth, and the trees growing upon said lots of land including trees suitable for timber as well as fire wood, and the same were thereby destroyed, the said fire raging for many days and very extensively over the whole or very large portion of all said lots, to the very great damage of your complainant, viz. : to the damage as aforesaid of three thousand dollars, all through the fault and carelessness of the parties having the care of and using said road and the engine aforesaid, whereby by virtue of the statute in such case provided, the parties aforesaid have, as complainant charges, become liable to pay your complainant the full value of such wood and timber thus destroyed as damages for such injury.

" And your complainant further avers that the property and ownership of said railroad was formerly in the European and North American Railway Company, which company, duly incorporated and organized under act of incorporation from the legislature of said state, built and finished said railroad, and were the legal owners thereof;— that while owners thereof, said Railway Company by deed bearing date March 1, 1869, conveyed the same in mortgage to J. Edgar Thompson and Hannibal Hamlin in trust to secure a certain large number of bonds for one thousand dollars each, or sums equivalent, thereto,

amounting in all to two million dollars, all of which remain due and unpaid at this time, excepting as hereinafter described;— that said Thompson having deceased, William B. Hayford was appointed by said court, according to law, to take his place as such trustee, and having been so appointed duly accepted said trust; that said company having failed to pay its said bonds and coupons attached thereto, according to the terms of said mortgage, the said Hamlin and Hayford, on petition of the holders of said bonds, were by said court's order duly placed in possession of said road as such trustees for the benefit of said bondholders, and as their agents as well as trustees, and they accordingly, under and by virtue of such order and judgment of said court, did take immediate possession of said railroad, said order having been passed on September 22, 1876, and thereafter as such trustees for said bondholders and for their benefit, they, the said trustees, continued to operate said road and run the engines and trains of said road over and along the same, from said Bangor to said Vanceboro, and across and over the said lands of this your complainant, until the thirteenth day of October, A. D. 1880, they, said trustees, duly accounting to said bondholders for all income and proceeds thereof; and that said fire, by which your complainant's lands were burned over as aforesaid, was kindled and promoted by the locomotive engine of one of the trains so run and operated by said trustees as aforesaid, for the benefit of said bondholders.

" And your complainant further gives the court to be informed that the said company, mortgagor as aforesaid, having failed to pay its bond coupons as provided in and by said mortgage, the said bondholders in manner provided by law on the third day of October, A. D. 1877, commenced proceedings to foreclose said mortgage and said proceedings having been legally prosecuted, the said mortgage was fully foreclosed on the third day of October, A. D. 1880, the said fire having taken place within said time, and that thereupon the holders of said mortgage bonds, and thus of said mortgage itself, under and according to the provisions of the statute in such case provided, on the thirteenth day of October, A. D. 1880, formed and organized

themselves into a corporation under the name of the European and North American Railway, being the company against which this suit is instituted, and thereupon, upon such organization, the said trustees conveyed the said railroad and its appurtenances and all the rights of said trustees, to said corporation thus newly formed, and the said corporation then and there accepted said conveyance, the same being subject to all liens and charges and to the payment of same, which were incurred in the running of the road as aforesaid by said trustees, for their benefit.

"And thereupon your complainant being aggrieved by the loss suffered by him as aforesaid by the fire communicated as aforesaid by the locomotive engine of said road, while so run by said trustees, in the interest of said bondholders, did commence an action at law before said court to recover damages therefor against said new corporation formed by such bondholders, and also another action at law against said trustees, being the defendants, aforesaid in this suit. And so the said actions having been tried before the said court, as a court of law, after mature deliberation they have decided that no such suit at law can be maintained against either, and therefore have ordered judgment for defendants with costs in both.

"Whereupon your complainant alleges, that he having suffered a great injury as aforesaid to his property, and having by the constitution of the state, therefor "a remedy by due course of law"— and the court having as aforesaid decided that he has no remedy by action, and thus in the language of the statute, being without "a plain, adequate and complete remedy at law."

"Therefore may it please your honors to grant to your orator your writ of subpœna directed to said defendants named as aforesaid, therein requiring them at such time as to your honors may seem fit, to appear and answer to the allegations of this bill—and that thereupon, after a proper hearing of the parties, you would order and decree, that the damages suffered as aforesaid by your orator, by the fire communicated as aforesaid, by the locomotive engine of the train so run and operated by said trustees, in the interest and as the agents of said bondholders, and thus of said new corporation, are and form an equitable

lien and charge upon said railway, and thus an equitable mortgage of the property so held at the time by the trustees and afterwards conveyed as aforesaid by said trustees to said new company, defendant herein ; and further that the said company be ordered or charged to pay all damages suffered as aforesaid, by reason of said fire under the circumstances detailed as aforesaid, the same to be assessed in such a manner as to your honors may seem fit and proper, the same to be paid within such time as your honors may think proper to allow and determine, and in default of such payment, that a forfeiture· or sale of said road, or such other remedy as to your honors may seem fit and proper be ordered, to the end that full payment may be assured of all damages to be so assessed, with costs.

"And further that your honors may award and decree such other and further remedy in the case as to equity may appertain in the premises.

Lewis F. Stratton.<br>By Albert W. Paine, his attorney."

*A. W. Paine*, for the plaintiff.

*Charles P. Stetson*, for the defendants.

DANFORTH, J. This is a bill in equity, before the court upon exceptions. The presiding justice "ruled *pro forma* that upon the facts stated in the bill, it is not sustainable." The answer is made a part of the case, but no proof has been put in, and there is no occasion for any, for in considering these exceptions, we must assume the facts stated in the bill as true.

The case shows a claim for damages done to the complainant's land, over which the railroad was located, by fire communicated from the locomotive engine in use upon the road at the time. The road was in the possession of and operated by the defendants, Hamlin and Hayford, as trustees, under a mortgage given by the original corporation to secure bonds issued by that company. The trustees had commenced proceedings for a foreclosure which was completed October 3, 1880 ; and on the thirteenth of the same month they " conveyed the road with its appurtenances and all the rights of said trustees " to the defendant company, a

corporation organized by such of the bondholders for whose benefit the mortgage was given, as chose to come in.

It has been decided that neither of these parties are personally liable in an action at law for the damages claimed. *Stratton* v. *E. & N. A. Ry.* 74 Maine, 422. Are they or either of them liable in equity and to what extent?

That equity is a proper, if not the only remedy, there can be no doubt. It is expressly given by the act of 1877, c. 197, which is an amendment of R. S., 1871, c. 77, § 5, p. 6, providing for equity jurisdiction "in cases arising out of the law, providing for the application of receipts and expenditures of railroads by trustees under mortgage."

The foundation of the plaintiff's claim rests upon R. S., 1871, c. 51, § 32, which is in these words : "When a building or other property is injured by fire communicated by a locomotive engine, the corporation using it is responsible for such injury." This provision first enacted in 1842, c. 9, § 5, was with some change of language incorporated into the R. S., of 1857, and has been continued in the form in which we now find it, up to the present time. If we consider this act as a part of the charter under which the plaintiff's land was originally taken, it gives him no vested rights as against these defendants. As it originally stood, the provision was that for an injury done, "by fire communicated by a locomotive engine of any railroad corporation, the said corporation shall be held responsible," &c. This was the provision when the charter was granted and when the land was taken. This gave the claim against the corporation owning the railroad, and against that alone. In this case the injury occurred before the foreclosure was completed, and hence while the original corporation was the mortgagor and the owner against all, except the mortgagee. But before the injury the change was made, the party using the engine became liable, and that change is recognized as valid. If then, it may be changed in one respect, it may be in another. But this change has been more comprehensive than that already referred to. In 1857, c. 57, provisions were made by which the trustees might take possession under a mortgage, in which the covenants had been broken, and under

which the liability of the trustees was limited to the funds in their hands, and personally to malfeasance and fraud, as now. This was long previous to the injury complained of. Thus, though the law upon which this claim rests has not been repealed, it has been materially changed, and by other sections modified from time to time without any questions raised as to the right of the legislature to do so, although in many instances such change and modifications must have interfered with vested rights, if the original provision was so a part of the charter as to render this liability to pay for such injury a part of the consideration for the land taken, or for the license for running over the land.

But in the strict sense this law was not a part of the charter, or of any charter, but rather a public law affecting the public generally, and, therefore, within the control of the legislature. That it is within the power of the legislature to grant railroad charters with the right of eminent domain, making provisions for the payment of damages for private property taken, must now be conceded. In this, as well as other charters, provision for such payment, independent of this act, providing for the payment of injury from fires, had been made and payment received or waived by the land owner. This act was passed in consideration of the hazard arising from the use of the engine, not to the land owner particularly, or chiefly, but to the citizens generally, and without a consideration moving from any citizen, except that general right of protection which all may claim from the sovereign power, which gives no vested right to any one, but rests in the discretion of the legislature. What is conclusive upon this point is the fact that the law does not apply exclusively to the owner of land taken, but as well to every person who owns property liable to be burned, and within the reach of fire that may be communicated by the engine, though not entitled to damages, on account of the location of the railroad. The legislature may then modify or even repeal the law if it sees fit.

But the law has not been repealed. It still stands, but the corporation to which it originally applied in its full force, and which would have been liable as the owner of the road, is not now liable, for at the time of the injury it was not in the use of

the engine. Nor was the defendant corporation in any legal sense, operating the road at the time of the injury, for it was not then in being. The trustees were operating the road, and were so far within the terms of the statute. But in a subsequent section of the same chapter their duties and liabilities are fixed. The old corporation which would otherwise have been liable to pay this claim, had become insolvent, unable even to pay the lien upon the road. It was, therefore, taken under the mortgage in accordance with these provisions of law, but as the road is of comparatively small value, unless it can be continued in use, and as the mortgage covered the franchise, and as it is a matter of public interest the legislature saw fit to authorize the trustees, not only to take possession, but to run it in the interest of all concerned. The trustees, though selected by the bondholders, were affirmed by the court, and may be deemed similar to assignees in insolvency and the property in the keeping of the law. It was, therefore, not only competent but necessary for the legislature to provide for the duties and liabilities of the trustees, while in possession of and operating the road. This it has done, and while all liens are preserved, as the road is operated very largely to preserve these liens and make them valuable, provision is made for the running and other expenses to be paid from funds which might otherwise belong to the mortgagees and be applied in the reduction of their debt. But this liability of the trustees is expressly limited to funds or property in their hands, except for malfeasance or fraud; for that they would be personally liable, as well as when they assume any liability by contract or otherwise. They are to "keep an accurate account of the receipts and expenditures of such road." "They shall from the receipts, keep the road, buildings and equipments in repair, furnish such new rolling stock as is necessary, and the balance, after paying running expenses, shall be applied to the payment of any damages arising from misfeasance in the management of the road, and after that according to the rights of the parties under the mortgage." The plaintiff's claim is equally a lien upon the receipts, whether arising with or without misfeasance or carelessness even. It is, in fact, incidental to the running of the road,

and may be considered a part of the running expenses, as the ordinary repairs of the road or equipments made necessary by wear or accident. If it had been paid by the trustees and charged in their account rendered the new company, it would have been allowed as a legal expenditure. Whether it is a lien upon the property of the road specifically covered by the mortgage, it is not necessary now to decide. If there is any of the money or property now in the hands of the trustees, upon which there is this equitable lien, they are liable to account for it under this process.

The bill alleges that the trustees " duly accounted to said bondholders for all income and proceeds " of the road, and that upon the organization of the bondholders into a new corporation, which is the defendant company, they conveyed to said corporation, " the said railroad and its appurtenances, and all the rights of said trustees."

In the answer the respondents say, " that in October, 1880, when they, said Hamlin and Hayford, as trustees, as aforesaid, did give possession of said railroad and make conveyance as aforesaid to said new corporation, they did pay, give and deliver all the property, moneys, accounts in their charge to said new corporation, and thereupon said trustees, were discharged."

This would be a discharge of the trustees from their trust, but leave them liable still to account for their stewardship to whomsoever, by the terms of the trust, had a right to call upon them. But what is, perhaps, of more importance in this case, is, that if this is not a direct statement of the fact, it affords a very strong inference that the trustees have paid money or conveyed property, or done both, to the defendant corporation which in equity should have liquidated this plaintiff's claim. If so, by a familiar and wide spreading principle of equity, the corporation is liable in this process to account for it to the extent to which it has been so received, whether it has been appropriated to reduce the bonded indebtedness, which under the circumstance so far as relates to money received by the trustees as income from the road, is secondary to this claim, or to any purpose which has not a priority to it. This principle of equity is sustained and

illustrated in *Amory* v. *Lowell*, 1 Allen, 504, and cases there cited.

But the difficulty in this case is, that the fundamental facts upon which the plaintiff's claim must rest, are not alleged in the bill. The decree cannot go beyond the allegations and proof. The liability of the trustees rests upon the fact that when the injury complained of occurred, and a demand made upon them for the payment they had in their hands, or under their control, money or property, which under the principles herein laid down, should have been appropriated to the payment of the damage. In the bill we find no such allegation. The only allegation in reference to this matter is the statement that the "trustees continued to operate said road and run the engines and trains . . . over the lands of this complainant, until the thirteenth of October, 1880, they, said trustees, duly accounting to said bondholders for all income and proceeds thereof." There is nothing in this statement tending to show any delinquency on the part of the trustees, but the inference would rather be that they have in all respects performed their duties.

The liability of the defendant corporation must depend upon its having received money or property from which the plaintiff is entitled to receive his pay. No such allegation appears. The only statement is that "upon such organization, the trustees conveyed the said railroad and its appurtenances, and all the rights of the said trustees to said corporation, thus newly formed."

Hence, as the bill now is, the ruling of the presiding justice was correct, and the exceptions must be overruled, unless upon motion at *nisi prius* the bill is amended.

PETERS, C. J., VIRGIN, LIBBEY, FOSTER and HASKELL, JJ., concurred.

WALTON, J., did not sit.